Granger, C. J.
Prior to June, 1810, the marks and bearing trees of the north-east corner of section twelve, third township, second fractional range, Miami purchase, had disappeared. The north line of said section was the boundary between lands of William Ludlow and Samuel Caldwell. 'The south-east corner of said section was well marked and its precise position known. In that month they caused Thomas Henderson, the county surveyor, to run the east lines of said section twelve and of section seven, which lay next on the north; and having by measure and testimony ascertained the north-east corner of said section seven, they divided the distance into two equal parts. It then appeared that a line running west from said central point would place some of Ludlow’s improvements on Caldwell’s land. So they agreed, orally, upon a point north of said centre as the starting point of the line between them, and that from said point the line should run west, or nearly west, thirty-two chains and sixty-six links; then south one chain and thirty-four links, and then west, or nearly west, to the north-west corner of said section twelve. This last named corner was also well known. Henderson thereupon made a plat, showing said survey and lines. On this plat the distance from the south-east corner of section twelve to the point so agreed upon as the north-east corner of section twelve was marked as eighty-two chains twenty-five links. The plat showed no stone, stake, bearing trees, or any mode for ascertaining said point, other than said distance. This plat was signed in the usual way by the surveyor and recorded in the county record of such surveys. Neither landowner signed it. This was not a proceeding under any statute regulating the establishment of lost or decayed corners.
On July 14, 1832, Ludlow acknowledged a' deed, by which he conveyed to James Caldwell a strip of land along, *455 or near, said line, before the same Henderson, who was then an associate judge of common pleas of the county. On this deed, on July 18, 1832, one William Wilson, who was present at the making of the survey and oral agreement in 1810, signed a written statement that at that time (June, 1810) the said agreed point was marked by a stake and was “ nine perches north of the dry well.” On the same day (July 18, 1832,) Ludlow signed a written statement, on the same deed, certifying that on seeing said certificate of Wilson he (Ludlow) was fully satisfied with its correctness and that it was his “ wish and desire that the same may be taken as explanatory of the within deed, so as to be evidence of the location and situation of the land intended to be granted and conveyed by said deed, hereby acknowledging the same as part of said deed as aforesaid.” And Ludlow on the same day again acknowledged the deed, as so added to, before said Henderson. This deed was then delivered and recorded. At some time prior to June, 1832, a stone was placed in said dry well as a landmark. No stone Avas placed at the point nine perches north of said dry Avell until 1868. No stone was placed at the point eighty-two chains and tAventy-five links north of the south-east corner of section tAvelve until 1874.
For more than sixty-five years prior to 1874 a county road called “ the North Bend road ” ran westerly near the north line of section tAvelve. Tradition stated that it was an old road in 1810. In 1841, under section 8 of the act of March 14, 1831 (Savuii, 1841), p. 800, this road was resurveyed and the record of the re-survey describes it as “ commencing at West end of 5th street in Carthage on the line between Mill Creek and Springfield townships.” Said section twelve Avas in Mill Creek township, and section seven in Springfield tOAvnship. The part of Carthage including said Fifth street Avas laid out by Samuel Caldwell before 1841. Said street ran from south-east to northwest. Its northerly line Avas well marked by stones set at the corners of at least íavo of the village blocks or squares. On each side of the streets that crossed the line of 1832 a *456 stone was placed at the point of crossing. An alley intersected Fifth street, at its westerly end, and a stone was there also on the line of 1832.
A triangular lot bounded by “Fifth street” and Taylor street lay on the northerly side of Fifth street, at its west end. This lot was owned by a man named Morton, and its north fence ran from street to street along the line of 1832. How long that fence had been there did not appear. .
For more than forty years prior to 1874, the Caldwell of 1810, and those claiming under him, held and possessed,^ enclosed first by a fence and from 1847 by a hedge, the land lying on the north side of said line drawn westerly from the point nine perches north of said stone in said dry well;” and openly and notoriously claimed to own down to said line. In 1874 the village of Carthage, improving so much of the said North Bend road as was then within the village, claimed that the line “between Mill Creek and Springfield townships,” was a line drawn westerly from a point 82 chains, 25 links, north of the south-east corner of said section twelve; cut down and destroyed the Caldwell hedge, and included in the improved road about an acre of the land theretofore so enclosed, possessed and claimed by the Caldwell of that day and his ancestors and grantors. He sued the village for damages. The village answered claiming that it took no land that did not belong, to the road. A trial resulted in a verdict and judgment against the village. A bill of exceptions showing a motion for a new trial overruled and excepted to, and presenting all the evidence was duly made part of the record. The error assigned was that the verdict was against the evidence. The district court held that the Henderson survey of 1810 was to be treated as a written agreement of the parties, and that no evidence to alter or contradict anything shown by it, was admissible; that the “agreed corner” must be held and taken as lying precisely 82' chains, 25 links, north of the south-east corner of section twelve. It reversed the judgment of the common pleas and remanded the cause for a new trial. James N. Cald *457 well, the plaintiff in the common pleas, asks this court to reverse the judgment of the district court.
No evidence was offered by either party, in the common pleas, tending to show the location of the original northeast-corner of section twelve. The village did not dispute the fact that Caldwell and his grantors had held and possessed the ground by well defined enclosures for more than forty years; or that the hedge had stood there since 1847., Unless then the evidence fairly established that the disputed ground was part of the North Bend road, Caldwell was entitled to the verdict. Notwithstanding the survey and agreement of 1810, as between Caldwell and Ludlow and all claiming under them subsequent to the deed of July, 1832, that deed settled that the north-east corner of section twelve was a point nine perches north of the dry well.. How long before that Caldwell’s fences held down to that line is not shown. From 1832 to 1874 they did so hold.
The original lines of the North Bend road are unknown. The re-survey of 1842 defines the starting point in two ways:—
1. The west end of Fifth street, Carthage.
2. On the line between Mill Creek and Springfield townships.
What line did the surveyor of 1842, who re-surveyed the road, treat as the township line ? Where did he and the reviewers then mark the road on the ground ? That is the vital question in this case. Prima facie they started on the true township line. But no evidence then existed as to the original north-east corner of section twelve. The south-east and north-west corners were well known. By running the east and north lines from those points, on the original courses, the intersection of those lines would have better claim as the original north-east corner than any other spot. But at the trial below neither party claimed that the re-survey of the road started from the north line of the section so run. The question as tried was presented thus: Caldwell claimed that the point indicated by the deed of 1832 was the identical spot indicated by the *458 plat of 1810 as the “agreed corner.” Carthage claimed that it was not. The district court held substantially that proof of such identity was inadmissible. But it seems to us that the real question (as we have already indicated) was, Did the re-survey of 1842 adopt, as the north-east corner of section twelve, the point nine perches north of the dry well; or the point 82 chains, 25 links north of the southeast corner of the section?
As the road was an old road before Henderson made his survey in 1810, his agreed corner had no necessary connection with the road. Their duty was to so locate the initial point of the road that it could readily be found. As suggested in the brief for Carthage “in the course of twenty years or more it came to be believed that this dry well was just a mile north of the south-east corner of section 12, Mill Creek township, and that the north-east corner instead of being 82.25 chains north of the south-east corner, was 2.25 chains north of this dry well, or 24 links south of its true position. It is thus shown how this dry well came to be thought a land mark.” A surveyor and viewers seeking only to indicate the point selected by them for the beginning of the road would be content with a measurement of nine poles from the stone in the dry well, thus popularly supposed to be “just a mile north of the south-east corner of section 12,” rather than undertake a measurement of that mile. The fact that the stones along the lines of the village streets close at hand conformed to this reputation of the dry well tended to make them feel satisfied of its verity. Moreover if the re-survey had adopted the corner of 1810, it began the road some sixteen feet north of- the old Caldwell fence. That fact would have been known to the Caldwells. Was it probable that, after the commissioners had established the road as re-surveyed, Caldwell would within five years thereafter plant his hedge — 2,100 feet long — in the roadway so marked out?
One of the Caldwells laid out Fifth street and its cross streets. Is it probable that he would disregard the' line so carefully, designated in his interest in 1832 ? The *459 north fence of a triangular lot called by one witness for the village, “ the Morton lot,” lying at the west end of Fifth street, immediately east of the east end of the North Bend road was “ on the dividing line between Caldwell and Morton.” The line of this fence extended westward would run along the middle of the road as improved by the village. This fence was on the line of 1832. The north-west corner of this lot was the north point of the “ west end of Fifth street.”
No witness of the re-survey was at the trial. The verdict was based upon circumstantial evidence alone.
We think that although the claim of Carthage that the “ agreed corner ” of 1810 was 16 feet north of the “ agreed corner” of 1832 be granted, parol evidence (as .well as legal evidence of other kinds) was admissible to prove which point the re-survey of 1842 treated as the section corner, and that the evidence fully supported the verdict. We therefore reverse the judgment of the district court, and affirm that of the common pleas.

Judgment accordingly.